IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARNIA PHILLIPS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendants. | Case No. 18-cv-0316 <br><br> Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sharnia Phillips brings this action under 42 U.S.C. § 1983 against the City of Chicago and 37 Chicago police officers following a raid of her home in January 2017. Defendant officers Anthony Cutrone, Michael Cavanaugh, Jazzy Pedregosa, James Foy, Robert Waterstraat, Charles Barona, David Garcia, Robert Cumming, Robert Hyma, Craig Miller, Matthew Lucki, Timothy Wolf, Robert Curran, Terence Huels, Jason Demas, Randall Darlin, Paris Thompson, and Michael Conroy filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 101). For reasons stated herein, Defendants' Motion to Dismiss [101] is granted in part and denied in part.

 **I. Background**

The following factual allegations are taken from the Third Amended Complaint (Dkt. 97, "TAC") and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

In the late-night hours of January 16, 2017, Phillips was in bed in her home when two fully armed S.W.A.T. teams of Chicago Police Officers arrived wearing tactical gear and body armor and carrying assault weapons. (TAC ¶2).[1] Phillips was awakened by a loud bang so she went to her front window and saw police cars parked with their headlights on and flashing blue and red lights, and she heard someone shouting over a loudspeaker. (*Id.* at ¶¶13-14). Phillips, a former law enforcement officer herself, rushed to the first floor to admit the police. (*Id.* at ¶16). In the process of reaching to unlock the front entrance of her home the door suddenly burst inwards. A stun grenade was thrown onto the floor near Phillips' feet, blinding and disorienting her. (*Id.* at ¶17). Phillips threw her hands up in surrender as police officers wearing tactical gear, helmets, body armor, and carrying automatic weapons charged through the doorway and into her home, shouting at her to "Get down!" and demanding to know "Who else is in the house?" (*Id.* at ¶18). The officers forced Phillips from her home and into the street on that cold January night, without shoes or a coat, wearing only her pajamas. (*Id.* at ¶19).

For approximately 45 minutes Phillips stood in the street under the guard of a heavily armed officer while the police officers ransacked her home, and during that time she believed she was not free to leave. (*Id.* at ¶20). The officers' search found nothing of an illegal or contraband nature, nor any of the items or people listed in the search warrant. (*Id.* at ¶21). After the officers completed their search Phillips was

---

[1] For clarity and consistent with Defendants' naming, the 18 defendants who moved to dismiss in the present motion are the "Defendants." The 19 defendants who moved for summary judgment are the "Movants."

2

allowed back into her home at which point, for the first time, she was shown a search warrant for the premises and for two individuals, Robert Gunn ("Robert") and Jasmine Gunn ("Jasmine") (collectively, "the Gunns"). (*Id*. at ¶¶22-23). The search warrants provide for seizure of illegal firearms, including assault rifles, and records of illegal firearm sales; they do not provide for the arrest of any person. (*Id*. at ¶23). The warrant was not a "no knock warrant". (*Id*. at ¶15).

Phillips was asked about her former tenant, Norma Moore, whom she believes may have been the grandmother of Robert and Jasmine. (*Id*. at ¶24). Moore had not lived at Phillips' residence for at least 6 months and the Gunns had never lived there. (*Id*. at ¶¶25-26). The police officers claimed that they had a "reliable informant," and told Phillips, "You're law enforcement, so you know how this goes." (*Id*. at ¶27). Phillips was not charged with or prosecuted for any crimes. (*Id*. at ¶28). The next day Phillips went to the police station to seek an explanation and was told her home had been under surveillance the entire previous day, though the only person to enter and exit was Phillips when she went to the gym. (*Id*. at ¶29).

Phillips alleges that the officers conducted an inadequate investigation in support of the search warrant application. (*Id*. at ¶41). She alleges that the officers failed to corroborate that the Gunns lived at Phillips' residence at the time of the raid; that they ever lived there; that they owned the residence; that they were present there the day of the raid; or that they had been at the residence any time in the prior six months. (*Id*. at ¶¶43-47). Phillips also claims that the officers failed to corroborate that assault rifles were present in the residence at that time or any time in the prior

3

six months; that the Gunns had ever owned or possessed assault rifles; or any information related to the 10 assault rifles. (*Id*. at ¶¶48-49, 52, 55). They also failed to establish any factual basis to evaluate the reliability of the confidential informant. (*Id*. at ¶56). The officers confirmed only that a house was located at 1408 W. 71st Street, Chicago. (*Id*. at ¶¶69, 71). The officers obtained two search warrants from the Circuit Court of Cook County. (*Id*. at ¶76). Attached to the TAC are the warrants and complaint in support. (*Id*., Exhs. B and C).

The TAC contains the following counts: Count I (False Arrest #1, pursuant to § 1983); Count II (False Arrest #2 (§ 1983)); Count III (Excessive Force (§ 1983)); Count IV (City of Chicago (§ 1983)); and Count V (State Law Torts).

**II. Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations",

4

but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). As the Seventh Circuit explained recently, when qualified immunity is raised in a motion to dismiss:

> Ultimately, dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law. We…reiterate that a complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred. And the familiar plausibility standard governs.

*Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (cleaned up). Dismissal is warranted "unless (1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Id*. at 592 (citations omitted). "There is no duty to plead around a qualified immunity defense…Because [the]

5

defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Denwiddie v. Mueller*, 775 F. App'x 817, 820 (7th Cir. 2019) (cleaned up).

### III. Analysis

Defendants request that the Court dismiss all of Phillips' claims except for excessive force under the Fourth Amendment (Count III) and intentional infliction of emotional distress (IIED) against Cutrone (Count V).[2] Defendants argue that Phillips' state law claims other than the IIED claim against Cutrone are time-barred and insufficiently pled and the federal claims other than excessive force should be dismissed on qualified immunity grounds.

#### A. State Law Claims

Defendants argue that Phillips' state law claims against every Defendant other than Cutrone are time-barred. They contend that her claims of false imprisonment, malicious prosecution, IIED, assault and battery all accrued on January 16, 2017. Plaintiff filed her original complaint on January 16, 2018, the last day remaining in the state-law limitations period, but named only Cutrone. "Illinois local governmental entities and their employees [] benefit from a one-year statute of limitations for 'civil actions' against them. While the two-year period still applies to § 1983 claims against such defendants,…the one-year period applies to state-law claims that are joined with a § 1983 claim." *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (citations omitted). *See also* 745 ILCS 10/8-101(a).

---

[2] Defendants refer to the counts in the Second Amended Complaint (Dkt. 76), not the operative Third Amended Complaint (Dkt. 97).

6

Phillips does not respond to Defendants' timeliness argument, resulting in waiver. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties…If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (cleaned up); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver applies "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

In light of Phillips' waiver and the well-settled law that the one-year statute of limitations applies to these claims against these defendants, the Court dismisses with prejudice Count V as time-barred against all Defendants except Cutrone. Defendants also raise a number of arguments about why the state law claims other than IIED are insufficiently pled. (Dkt. 101 at 11-15). Phillips' cursory response (Dkt. 107 at 15) does not warrant permitting the other state law claims to proceed against Cutrone. *See G & S Holdings LLC*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721; *MBM Holdings LLC v. City of Glendale*, 2021 WL 423760, at *2 (7th Cir. Feb. 8, 2021) (it is the litigant's responsibility to "develop reasoned arguments supported by citation to legal authority"). Thus the only surviving state law claim is IIED against Cutrone.

### B. Qualified Immunity

"Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time…There is a two-

7

part test for qualified immunity: '(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation.'" *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citations omitted). These questions can be addressed in any order. *Id*. Phillips alleges violations of the Fourth Amendment. The Fourth Amendment "expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King,* 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011).

Defendants all seek qualified immunity, but address Cutrone, the affiant for the search warrant, separately from the other defendants who executed the warrant.

### i. Defendant Cutrone

Phillips argues that Cutrone knew or should have known that his affidavit in support of the warrant did not create probable cause when he presented it to the issuing judge. She claims Cutrone obtained search warrants "premised on information that was either knowingly presented as false or presented as true in reckless disregard for the truth." (TAC ¶76).[3]

---

[3] Phillips refers to Officer Cutrone and "other police officers" as "the Investigators" (*Id*. ¶41). However Phillips does not identify the other "Investigator" police officers or any information about their role in the investigation. The Court notes that Officers Conroy and O'Shea are identified in the complaint for the search warrant as driving with the informant when the informant identified the building as the residence where he or she saw the Gunns with assault rifles on January 13, 2017. (*Id*., Exh. C). However Phillips does not make any allegations specific to Conroy or O'Shea, allege any facts about their involvement in the investigation or allege that they had any role in applying for the search warrant. Therefore

8

A "search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (cleaned up). "An affidavit that misleads by lies or omission undercuts the magistrate's ability to make an independent probable cause determination." *Rainsberger v. Benner*, 913 F.3d 640, 651 (7th Cir. 2019). "A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Betker*, 692 F.3d at 860. A "'reckless disregard for the truth' can be shown by demonstrating that the officer 'entertained serious doubts as to the truth' of the statements, had 'obvious reasons to doubt' their accuracy,' or failed to disclose facts that he or she 'knew would negate probable cause.'" *Id*. In assessing whether the search-warrant application demonstrates probable cause, "[s]tatements that are both unreliable and uncorroborated do not support probable cause." *Id*.

To defeat qualified immunity, a plaintiff "need only 'point to a closely analogous case decided prior to the challenged conduct." *Id.* at 864. *See also Est. of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010) (closely analogous case analysis does not require the "existence of a prior case that is directly on point."). By 2017 it was clearly established that it was a violation of the Fourth Amendment for an officer applying

---

the Court's determination that Cutrone is not entitled to qualified immunity at this stage based on his application for the search warrants is limited only to him.

for a warrant to recklessly disregard the truth by relying on unreliable and uncorroborated statements and failing to disclose facts that he knew would negate probable cause. *See United States v. Glover*, 755 F.3d 811 (7th Cir. 2014); *Mykytiuk*, 402 F.3d at 776–77; *Betker*, 692 F.3d at 860-64 ("plenty" of cases demonstrating that immunity does not extend where the judicial probable cause finding is based only on information "the officer knew to be false or would have known was false had he not recklessly disregarded the truth.") (citations omitted); *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010) (presumption of warrant's validity can be overcome if the "officer intentionally or recklessly withheld material facts from the warrant-issuing judge"); *Denwiddie*, 775 F. App'x at 820 (clearly established in 2014 that ignoring key facts when obtaining a search warrant was unlawful).

Phillips adequately alleges that Cutrone violated that constitutional right. Because the merits of her claim are not being tested, Defendants' attempt to shift the burden to her to defeat qualified immunity is not appropriate at this stage. *See Denwiddie*, 775 F. App'x at 818 ("the *officers* did not establish that qualified immunity applies based on the *facts as [plaintiff] pleaded them*.") (emphasis added). The Court reviews Cutrone's conduct as "alleged in the complaint." *Id.* at 820. In addition Defendants' contention that Phillips must point to a statement in the affidavit that was "actually false" (Dkt. 101 at 9) is too narrow. *See e.g. Rainsberger*, 913 F.3d at 651 (probable cause can be undermined by affidavit "that misleads by lies or omission"); *Betker*, 692 F.3d at 860 (reckless disregard for the truth can include failure to disclose facts that officer knew would negate probable cause); *United States*

10

*v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) (even conclusory statement in affidavit that informant was a "reliable source," "standing alone without any supporting factual information, merit[s] absolutely no weight").

Phillips claims that the search warrant sought "criminals and contraband that the officers either knew, or should have known were not there, or unreasonably, or in reckless disregard of the truth, believed were at that location." (TAC ¶3). She alleges that Officer Cutrone failed to corroborate information from the informant and his investigation was deficient under the City's own Special Order S04-19. (*Id.* ¶¶40, 78).[4] Phillips alleges that Cutrone failed to corroborate through an independent investigation any of the "facts" provided by the anonymous informer to support the search warrant. (*Id.* ¶41). He also failed to establish that the anonymous informer was reliable and had sufficiently detailed information. (*Id.* ¶42). Specifically Cutrone failed to corroborate that the Gunns lived at Phillips' residence at the time of the raid or ever, that they owned the residence or that the Gunns were present in the residence on the date of the raid or at any time in the prior six months. (*Id.* ¶¶43-47). Cutrone also failed to corroborate on the date of the raid or any time including during the past six months that assault rifles were present in the residence or that assault rifles – or any items resembling assault rifles, such as the gray, plastic storage totes

---

[4] Special Order S04-19 requires that before the application for and the execution of a warrant, a "designated unit Supervisor the rank of lieutenant or above" examine the Complaint for Search Warrant and initial with his or her star number and record the date of approval. (*Id.* ¶78, Exh. A). That was not done in this case. (*Id.* ¶79). The Special Order requires among other things that when a cooperating individual is involved, the designated unit supervisor the rank of lieutenant or above will determine that the complaint for the search warrant "clearly indicates that an investigation undertaken as a result of the information received validates an assertion of probable cause." (*Id.* Exh. A).

11

– were ever seen entering or leaving the residence. (*Id.* ¶¶48-50). He did not corroborate that the Gunns were ever seen entering or leaving the residence with assault rifles, gray storage totes, or any item of any kind resembling assault rifles, that they ever possessed or owned assault rifles or were ever seen in any other location, at any time, with assault rifles, gray storage totes, or any item of any kind resembling assault rifles. (*Id.* ¶¶51-53). He did not corroborate that the Gunns had previously been arrested or convicted of possessing illegal firearms or had any criminal history of trafficking any firearm. (*Id.* ¶54). He never corroborated that up to 10 assault rifles in gray, plastic tote containers were available for sale on the legitimate market, or had recently been recently purchased, or had recently been stolen by anyone, anywhere, or were in the process of being trafficked, or were otherwise available on the black market. (*Id.* ¶55). He also failed to establish any factual basis to evaluate the reliability of the confidential informant by failing to establish 1) the identity of the anonymous informer, 2) a reason why the informer would have information, 3) whether the informer had previously given information, 4) how reliable that information had been, 5) the informer's connection to the Gunns, 6) why the informer was in the house during the weapons sale in the first place, and 7) whether the informer played any role in the weapons sale. (*Id.* ¶¶56-58). The informer did not provide any information that would implicate him/her in the sale of any weapons at the residence. (*Id.* ¶59). The complaint for the warrant failed to include even a conclusory statement that the information was "reliable." (*Id.* ¶60).[5]

---

[5] Defendants argue that the informant's criminal history and ongoing investigations were given to the issuing judge. However the record lacks clarity on this at this stage. Attached to

The informant did not draft or sign his/her own affidavit and did not testify before the issuing judge. (*Id.* ¶¶61-62). Cutrone did not corroborate the informant's identification of the Gunns in a photo line-up. (*Id.* ¶63). The only "corroboration" Cutrone did was to confirm the publicly available evidence fact that there is a house at 1408 W. 71st Street. (*Id.* ¶¶66-68). Phillips claims that Cutrone should have known before the raid that Phillips was the owner of the residence at 1408 W. 71st Street, that she was a former law enforcement officer with no criminal history or outstanding warrants, that she was not related to the Gunns and did not match a description of either of them, and she was the only person to enter and exit the house on January 16, 2017. (*Id.* ¶¶73-74).

In short, Phillips alleges that Cutrone relied solely on uncorroborated information from an informant whose reliability was not established or even mentioned. Phillips has therefore adequately alleged that Cutrone violated her clearly established constitutional right to be free from a search that was based on warrant premised on an officer's investigation that recklessly disregarded the truth.

### ii. All Defendants Except Cutrone

For the Defendants who executed the warrant, they contend that they are entitled to qualified immunity because they detained Phillips in reasonable reliance on a facially valid warrant. Phillips alleges that the officers knew or should have known the search was not supported by probable cause because no police officer would

---

the complaint for the search warrant, the CPD case report apparently showing informant's history, says the report was generated by Cutrone on January 19, 2017, three days *after* the search warrant was sworn out. (TAC, Exh. C).

13

reasonably believe that the facts set forth in the warrant complaint could support a finding of probable cause that evidence of a crime could be found at her residence. (TAC ¶77; Dkt. 107 at 14-15).

However the officers executing the warrant acted pursuant to a judicially-authorized warrant. *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 1016, 94 L. Ed. 2d 72 (1987) (case presented "two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed."). "Even where a warrant is invalid for one of these reasons [such as lack of probable cause], an officer ordinarily acts reasonably, and is therefore entitled to qualified immunity, if the warrant is judicially-authorized. An officer is not expected to question a judicial determination." *Archer v. Chisholm*, 191 F. Supp. 3d 932, 944 (E.D. Wis. 2016), *aff'd*, 870 F.3d 603 (7th Cir. 2017) (citations omitted). The good-faith exception to the exclusionary rule applies where "officers conducting the unlawful search relied in good faith on a search warrant." *Edmond v. United States,* 899 F.3d 446, 451 (7th Cir. 2018). *See also United States v. Lickers*, 928 F.3d 609, 620 (7th Cir. 2019) ("While probable cause may have been lacking from the state and federal warrants, [*United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984)] applies to save the federal search.").

Phillips does not allege facts giving rise to the inference that the officers executing the warrant did not rely in good faith on the warrant. She does not claim that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or that the warrant was "so facially deficient…that

14

the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923; *Lickers*, 928 F.3d at 619 ("an officer cannot ordinarily be expected to question a judge's probable cause determination").

Phillips does not allege that any of the Defendants other than Cutrone were involved in the investigation that led to the issuance of the warrant or that it was otherwise objectively unreasonable for them to rely on the judicially-authorized warrant. She claims in a conclusory fashion that "no police officer would reasonably believe that the facts set forth in the complaint for a search warrant were sufficient to support a finding of probable cause that evidence of a crime would be found at [her] Residence." (TAC ¶77). Although generally qualified immunity is not decided at the motion to dismiss stage, Phillips' allegations must still plausibly allow the Court to conclude that Defendants violated a clearly established constitutional right. *See Hanson*, 967 F.3d at 591 ("a defendant asserting qualified immunity is entitled to dismissal if the allegations in the complaint fail to state a claim of a clearly established right having been violated"). Phillips does not allege facts giving rise to the inference that the officers did not rely in good faith on the judicially-authorized search warrant. Moreover Phillips' response to Defendants' argument on this issue is underdeveloped (Dkt. 107 at 14-15) and she does not address Defendants' argument that the non-affiant Defendants' conduct should be assessed separately from Cutrone's conduct (Dkt. 101 at 5).

Therefore the Defendants other than Cutrone are entitled to qualified immunity on the federal claims other than excessive force.

### C. False Imprisonment and Excessive Force Claims

Defendants argue that the false imprisonment claim should be dismissed as duplicative of the false arrest claim. The Court does not agree. *See Selep v. City of Chicago*, 842 F. Supp. 1068, 1072 (N.D. Ill. 1993) (rejecting defendants' contention that false imprisonment should be dismissed as duplicative of false arrest count); *Green v. Saenz*, 812 F. Supp. 798, 801 (N.D. Ill. 1992) (collecting cases).

The Court does agree, however, that the excessive force claim may proceed only under the Fourth Amendment. *See Lester v. City of Chicago*, 830 F.2d 706, 710 (7th Cir. 1987).

### IV. Conclusion

For the stated reasons, Defendants' partial Motion to Dismiss [101] is granted in part and denied in part. The remaining claims are: excessive force (Count III) against all Defendants; Counts I and II against defendant Anthony Cutrone; and the state law claim of intentional infliction of emotional distress against Cutrone only (Count V).

E N T E R:

Dated: April 26, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge